UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 13 |
| Roberto Maldonado, Sr., ) | |
| Debtor. ) | No. 11 B 33575 |

## MEMORANDUM OPINION ON CHAPTER 13 TRUSTEE'S MOTION TO CONDUCT 11 U.S.C. § 329 HEARING

This case was filed under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C.

The Chapter 13 Trustee moved to conduct a hearing under 11 U.S.C. § 329 as to attorneys' fees paid to Debtor's counsel, Timothy K. Liou ("Liou"). He replied to the Motion and a hearing was held. The United States Trustee ("U.S. Trustee") supported the Motion and submitted his own briefs on that Motion. Following hearing thereon, the following will constitute Findings of Fact and Conclusions of Law pursuant to which counsel will be ordered to refund to the Chapter 13 Trustee $2,768.77 paid to him to be used to fund Debtor's Plan.

### Findings of Fact and Conclusions of Law

The Debtor previously filed three Chapter 13 cases (No. 06 B 10289; No. 09 B 01137; and No. 10 B 32258) Each was dismissed for failure to make plan payments; the first, twenty-two months after confirmation; the second, eleven months after confirmation; and the third, sixth months after confirmation. Liou has received approximately $10,000.00 in total compensation for representing Debtor in those three cases. Before this case was filed, Debtor paid $3702.64 to Liou's firm, of which $933.87 was applied to a fee due from a prior case and the balance applied to Liou's fee in this case.

Debtor's schedules reflect that he is the owner of a single family residence in which he resides with his spouse, located at 2224 N. Kilpatrick Avenue in Chicago, Illinois, which is encumbered by a first mortgage in favor of Gregory Funding, LLC. Debtor's plan proposes that the Chapter 13 Trustee make current mortgage payments to that lender in the amount of $1,664.45 and that the Chapter 13 Trustee pay pre-petition arrearages to said lender in the total amount of $46,473.00. When Debtor filed his first Chapter 13 case in 2006 his plan provided for pre-petition arrearages to be paid to said lender in the total amount of $12,569.77. Clearly, Debtor fell further and further behind on his mortgage as he struggled through several Chapter

13 plans between 2006 and 2011. During the present case, the stay was lifted on Debtor's home on July 11, 2012 and so, in the end, he will lose his home after that long struggle.

On August 16, 2011, the Debtor filed his bankruptcy petition and Chapter 13 Plan. The Plan in this case provides for 60 monthly payments to the Chapter 13 Trustee of $2,779.00 each. Monthly mortgage payments in the amount of $1,644.45 are to be made by Chapter 13 Trustee. General unsecured creditors are to receive 10.04%.

On August 19, 2011, Liou filed a "Disclosure of Compensation of Attorney for Debtor" ("Rule 2016(b) Disclosure") and the "Court-Approved Retention Agreement" ("Retention Contract"). The Rule 2016(b) Disclosure reflected a payment by Debtor to Liou in the amount of $2,768.77 that was applied to the total $3,500.00 in legal fees in this case. The remaining $731.23 in legal fees is listed as a priority claim in the Chapter 13 Plan.

On September 22, 2011 the creditors meeting required by 11 U.S.C. § 341 was held. At that time, Debtor testified that, prior to filing the current petition, he paid $933.87 to Liou for the balance owed for Liou's representation in his 2010 Chapter 13 case. Such amount was not disclosed on the Rule 2016(b) Disclosure, but was listed on the Statement of Financial Affairs ("SOFA") as a "payment to creditors" in Section 3 and as a "payment related to debt counseling or bankruptcy" in Section 9. The Chapter 13 Trustee represents that Debtor also testified that he thought that most of the $2,768.77 paid to Liou was to be applied to his mortgage, not to attorney fees. Debtor also testified that Liou told him to make his first payment to the Chapter 13 Trustee on September 16, 2011, *i.e.*, within the 30-day period under 11 U.S.C. § 1326(a)(1).

The U.S. Trustee states that, subsequent to the creditors' meeting, Liou provided a document purportedly signed by Debtor, which, among other things, states that Debtor made an initial payment of $3,702.64 (shown as $933.87 for prior case fee due plus $2,768.77 as a current case pre-petition payment applied to attorney fees).

On October 17, 2011 the Chapter 13 Trustee filed a Motion to Conduct a 11 U.S.C. § 329 Hearing ("329 Motion"). Liou was ordered to file an Answer to the Chapter 13 Trustee's 329 Motion by December 7, 2011, which he did.

On February 24, 2012 an evidentiary hearing was held. The Court ordered briefing on two questions. (Feb 24, 2012 Tr: 37–38) The first issue was whether it was proper for Liou to collect the balance owed to him for attorney fees incurred in connection with the prior bankruptcy case for Debtor or whether it was a conflict of interest requiring the consent and

2

waiver by Debtor. The second issue was whether it was proper under § 329 for Liou to receive all sums owed to him pre-petition plus a substantial portion of his fees for the current case, or whether the Court should adjust the timing of fee payments to Liou.

On March 6, 2012 Liou filed his first Application for Compensation in this case. He sought compensation in the amount of $3,500 of which $2,768.77 had already been received from the Debtor. (Dkt. No. 56)

On March 15, 2012 the Chapter 13 Trustee filed a Memorandum in support of his position on the 329 Motion. (Dkt. No. 57) On March 16, 2012, the U.S. Trustee filed a separate post-hearing brief. (Dkt. No. 58)

On April 6, 2012 Liou filed his Response to U.S. Trustee's Post-Hearing Brief. (Dkt. No. 61) One day later Liou filed a Memorandum in Response to Chapter 13 Trustee's opening brief. (Dkt. No. 64)

On April 11, 2012 Liou filed a second Application for Compensation. The compensation he sought was in the amount of $3,500 but the application stated he received none of that amount from the Debtor. (Dkt. No. 71)

On April 19, 2012 the Chapter 13 Trustee and U.S. Trustee filed separate Replies.

On April 20, 2012 Liou filed an Amended Application for Compensation to show correctly that funds previously received were $2,768.77, not zero. (Dkt. No. 76)

## I. Pre-Petition Payment

The first issue is whether it was proper for Liou to collect the balance owed to him for attorney fees incurred in connection with Debtor's prior bankruptcy, or whether it was a conflict of interest to do so for which the express consent and waiver of Debtor was required.

The Chapter 13 Trustee argues that Debtor's payment of Liou's fee balance for prior Chapter 13 case representation days before the filing of Debtor's current case was a preference payment, which created a conflict of interest between Liou and Debtor, as well as between Liou and other unsecured creditors and the estate. The Chapter 13 Trustee argued that this type of payment is precisely what 11 U.S.C. § 547 was designed to avoid so that one prepetition creditor is not preferred over another.

Liou argues that the $933.87 received from Debtor in payment for representing Debtor in the prior Chapter 13 case is not avoidable as a preference payment because Liou's agreement to

3

represent Debtor in a fourth successive Chapter 13 case constituted "new value" under 11 U.S.C. § 547(c)(4).

The Chapter 13 Trustee cites *In re Fleming Companies, Inc.*, 305 B.R. 389 (Bankr. Del. 2004) in support of his position that receipt of a preference payment creates an actual conflict of interest requiring disqualification and creates a conflict with unpaid creditors. However, that case involved a Chapter 11 debtor and was analyzed under 11 U.S.C. § 327. Similarly, *In re Pillowtex, Inc.*, 304 F.3d 246 (3rd Cir. 2002) is offered for the proposition that a preferential transfer constitutes actual conflict of interest between counsel and debtor, requiring disqualification under Code § 327. That case also concerned a Chapter 11 debtor and was also analyzed under 11 U.S.C. § 327. Section 327 does not apply in Chapter 13 cases. *In re Gutierrez*, 309 B.R. 488, 501 (Bankr. W.D. Tex. 2004)

The Chapter 13 Trustee argues that Liou aggravated the Debtor's precarious financial situation by causing the preferential payment to be made to him instead of applying that payment toward Debtor's Chapter 13 Plan.

Closely related to that argument, the Chapter 13 Trustee also argues that Liou breached his fiduciary duty to Debtor by collecting pre-petition payment for the fee balance due on Debtor's prior Chapter 13 by putting his personal interests above his client's interest. *See In re Winthrop*, 848 N.E.2d 961, 972 (2006) ("The attorney-client relationship constitutes a fiduciary relationship as a matter of law."); and *Doe v. Roe*, 681 N.E.2d 640, 645 (Ill. App. 1997) ("When, in the course of his professional dealings with a client, an attorney places personal interests above the interests of the client, the attorney is in breach of his fiduciary duty by reason of the conflict."). He argues Liou violated Rule 1.7 of the Illinois Rules of Professional Conduct ("IRPC") by putting his interest in maximizing his personal recovery on a debt he knew could be discharged ahead of Debtor's interest in obtaining a fresh start, causing a conflict of interest. As noted above, this was Debtor's fourth Chapter 13 filing; each of the three prior cases ended in dismissal because the debt burden was too much for debtor to manage. The Chapter 13 Trustee contends that Debtor's interest in this case was to direct all available funds toward the repayment of his mortgage arrears, and not toward the repayment of Liou's pre-petition unsecured debt, creating a material conflict.

The Illinois Rules of Professional Conduct do not apply in these proceedings. Local Bankruptcy Rule 9029-4A provides that the "Rules of Professional Conduct for the Northern

4

District of Illinois apply in all proceedings and matters before this court. Under Local Rule 83.50 of the Rules of Professional Conduct for the U.S. District Court, Northern District of Illinois, the applicable disciplinary rules are the ABA Model Rules. ABA Model Rule 1.7 ("Rule 1.7") addresses conflicts of interest regarding current clients.

Several opinions have found a conflict of interest where an attorney acts as a creditor in a debtor's bankruptcy case: *In re Westmoreland*, 270 F.Supp. 408, 411 (D. Ga. 1967) (disallowing attorneys' fees because debtor's attorney was both a creditor of a wage earner and represented wage earner in a Chapter XIII proceeding); *In re Martin*, 197 B.R. 120, 129 (Bankr. D. Colo. 1996) (disallowing, under 11 U.S.C. § 329, attorneys' fees because debtor's counsel was post-petition creditor by virtue of installment arrangement for Chapter 7 attorney fees and therefore had a conflict of interest with the debtor); *In re Thompson*, 116 B.R. 679, 682 (Bankr. W.D. Ark. 1990) (imposing sanctions on debtors' counsel who was an undisclosed creditor and received avoidable pre-petition mortgage lien); *In re Ramirez*, No. 03-47872, 2006 WL 3838176, *2, *5 (Bankr. S.D. Tex. Dec. 29, 2006) (denying attorneys' fee because debtor's attorney's pre-petition claim against debtor was not properly disclosed).

However, at least one other judge found no conflict of interest when an attorney attempts to be a debtor's creditor. In *In re Gutierrez*, 309 B.R. 488 (Bankr. W.D. Tex. 2004) the debtor's attorney openly sought fees owned from prior case and filed a proof of claim. *Id.* at 490. The Chapter 13 Trustee in that case objected to payment of the claim, arguing that the claim should be disallowed. *Id.* The bankruptcy judge overruled the objection and declined to create a *per se* rule disqualifying an attorney simply by virtue of the existence and assertion of a claim for unpaid fees from the previous case. *Id.* at 501.

When Debtor approached Liou to file his fourth Chapter 13 case, Liou was an unsecured creditor of Debtor because of the unpaid fees from the 2010 Chapter 13 case. Liou's personal interest was to collect up front the unpaid fees, as well as fees for the new case, especially given Debtor's failure in completing the previous Chapter 13 plans. It was in Debtor's best interest to pay as much into the plan as possible to save his home and his driving privileges, which in turn would save his job. Thus, Liou's interest was in potential conflict with Debtor's interest.

ABA Model Rule 1.7(a), with certain exceptions, prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest. Under Rule 1.7(a)(2), a concurrent conflict of interest exists if there is a significant risk that the representation will be

5

"materially limited" by a personal interest of the lawyer. Thus, one issue in this case is whether Liou's interest in receiving payment for representation in the prior case materially limited his representation in the current case, i.e., an actual conflict.

Liou testified that his staff routinely advises debtors of such conflicts and all their bankruptcy options, including filing for Chapter 7. All parties appear to agree that Debtor wanted to save his home, as well as his job by keeping his driving privileges, and, therefore wanted to proceed with a Chapter 13, not Chapter 7, case. However, Liou incredibly denies knowledge even after the series of prior cases brought to save the house. that the primary purpose of Debtor's Chapter 13 Plan was to save his home. Liou also argues that there is no evidence that his representation of Debtor was compromised by his requesting payment of the balance due of prior case fees or that any decisions Liou made concerning his representation of Debtor were affected by his receipt of the prior case fee payment or payment of fees for the new case.

It is clear that Debtor wanted Liou to represent him in the current case, because he had represented him in the prior three cases. Debtor testified, however, that he knew that only about $1,000 of his initial payment would be applied to Liou's fees. Liou testified that he would have represented Debtor in the current case even if Debtor had not paid the pre-petition fees before filing of the current case, as he had done with other debtors in the past; but there was no testimony from Liou's staff or Debtor that Debtor was informed of such position. Indeed it is apparent that the decision made by Liou to represent Debtor in the current case was affected by his receipt of the prior case fee and a large payment on the current case fee instead of waiting to be paid from Chapter 13 Trustee payments. That made it much harder for Debtor to start payments on his mortgage arrears. Therefore, there was an actual conflict of interest which materially limited Liou's representation of Debtor. Liou's personal interest in collecting his fee balance in the prior bankruptcy case and pre-petition fee materially limited his representation of Debtor in the current bankruptcy case.

The Chapter 13 Trustee argues that even if it was reasonable for Liou to believe that he could diligently represent Debtor despite the conflict of interest, Liou failed to obtain a waiver of such conflict. Under IRPC Rule 1.7(b), effective waiver in this situation required Debtor's informed consent. The Chapter 13 Trustee contends that informed consent was impossible because Liou did not personally speak with Debtor regarding this case prior to its filing.

6

Liou contends that as a matter of course his staff discusses the options of Chapter 7 versus Chapter 13 with each debtor. He also contends that Debtor wanted to maintain his driver's license and his livelihood by making payments toward his outstanding parking violations, which necessitated a Chapter 13, not Chapter 7, filing. Liou insists that because there was no conflict of interest, no waiver by Debtor was necessary. For reasons earlier stated, there was conflict and waiver was required. Therefore the question as to whether or not Liou obtained informed consent and waiver from Debtor must be addressed.

Debtor testified he knew that about $1,000 of his initial payment would be applied to Liou's prior unpaid fee balance, which implies possible consent and waiver of any conflict as to that amount, but not as to the rest of they payment. However, it is not clear that Debtor's consent for even that payment was actually informed. It is doubtful from the record that Liou's staff fully explained to Debtor the options for such claim and the implications in his current case. It is clear from Debtor's testimony that he is not fluent in English and it is not clear how well he reads English. Ms. Valdez, Liou's staff interpreter, never gave any testimony that she advised Debtor of any conflicts, of other options regarding Liou's pre-petition claim, or resulting case implications. Rather, she testified that she explained to Debtor the "directives page" and how a portion of his initial payment would be applied to attorney fees for the prior case. IRPC 1.7(b)(4) does not require written confirmation of a client's informed consent of representation despite a conflict. As a result, Liou was not required to get Debtor's consent in writing under that rule. But particularly when a client is not fluent in English, special care should be taken to make a written record of waiver even if not required by Rule.

Finally, the Chapter 13 Trustee argues that by knowingly accepting a preferential transfer, Liou engaged in conduct prejudicial to the administration of justice in violation of IRPC Rule 8.4. Under that rule, "lawyers owe a duty to assist the court in administering justice and in arriving at correct conclusions." *In re Smith*, 659 N.E.2d 896, 904 (Ill. 1995). Liou breached that duty, it is argued, by accepting a preferential payment and a large payment on the new fee. The Chapter 13 Trustee argues Liou thus impeded the administration of justice.

We must reject Liou's argument that Debtor received "new value" for the preferential payment fails because Liou would have been required to disclose such "new value" in the Retention Agreement, Rule 2016(b) Statement, and Application for Compensation, none of which Liou did.

7

## II. Application of Debtor Payments Under § 329

The second issue is whether it was proper under 11 U.S.C. § 329 for Liou to receive all sums owed to him pre-petition and a substantial portion of his fees for the current case, or whether the Court should adjust the timing of the payments to Liou.

Liou's application of the initial funds received from Debtor to Liou's back due fees and fees in the current case were in the best interest of Liou, not Debtor. Had the $2,768.77 received by Liou from Debtor been forwarded timely to Trustee as a Plan payment, there would have been sufficient funds to pay the September 1, 2011 mortgage payment. Because Liou took the entire amount for his fees, the September 2011 payment was not made on time, and Debtor fell further behind on his mortgage than he was when he filed this case.

Liou received a total of approximately $10,000 as compensation in the three earlier cases, most of which was "up front" prior to filing of the cases, for representing Debtor in the three prior Chapter 13 cases. Debtor fell behind on his mortgage in each case. Liou's application of Debtor funds to his fees in this case rather than to the Plan, interfered with Debtor's ability to fund his Chapter 13 Plan and was contrary to his client's best interest but consistent with Liou's attention to fee collection instead of Debtor's ability to complete a Plan.

There is also concern over Debtor's language barrier and his understanding of Liou's communications regarding the case. Debtor testified at the § 341 creditor's meeting in Spanish, but all documents were in English. Even if Debtor understood that the pre-petition payments to Liou were to be applied partly to Liou's legal fees, it is doubtful that Debtor understood how that would impact his Chapter 13 Plan and, thus, his mortgage.

The primary purpose of Debtor's Chapter 13 Plan was to save his home, which was hobbled by Liou's pattern of application of pre-petition funds to Liou's legal fees instead of to the Chapter 13 Plan. *In re Lanigan*, 101 B.R. 530, 532 (Bankr. N.D. Ill. 1986) (stating that attorneys who present thinly funded plans should share the risk of possible failure thereof and thereby be encouraged to scrutinize all plans even more closely); *Pappas & Rose, P.C.*, 229 B.R. 815, 818–19 (Bankr. N.D. Ill. 1998) (stating that timing of attorneys fee payments is directly linked to successful administration of the plan); *see also In re Shorb*, 101 B.R. 185, 187 (9th Cir. BAP 1989) (permitting payment of attorney fees may be spread over the life of the plan); *In re Thompson*, No. 06-15561PM, 2008 WL 53279, *1 (Bankr. D. Md. 2008) ( refusing to order that attorneys' fees be paid up front because the bankruptcy judges of Maryland were concerned by

8

the actions of some members of the Bar whose primary interest appeared to be their own compensation rather than the welfare of their clients; rather the court ordered payments through the plan). The Chapter 13 Trustee therefore seeks to require Liou to disgorge and turnover to him the entire $3,702.64 ($933.87 prior case fee pre-petition payment plus $2,768.77 current case pre-petition payment) Liou received from Debtor before filing this case. The Chapter 13 Trustee also asks the court to deny or significantly reduce Liou's request for $3,500 in fees in the current case.

The U.S. Trustee's summary of this case was accurate:

> Debtor testified that he believed the funds remaining after Liou received the payment for the unpaid prior case fees would go towards his mortgage. Liou's application of the initial funds received from Debtor to Liou's fees were in the best interest of Liou, not Debtor. Had the $2,768.77 received by Liou from Debtor been forwarded to Trustee, there would have been sufficient funds to pay the September 1, 2011 mortgage payment. As a result, the September 2011 payment was not made, and Debtor fell further behind on his mortgage than he was when he filed his Petition. Debtors mortgage arrears have ballooned from $12,768 on the petition date of his first Ch. 13 case to $46,473 at the time of the hearing on the subject Ch. 13 Trustee's Motion in this case.

In response to these arguments, Liou contended that he was entitled to receive the $2,768.77 pre-petition payment for his services in the current case as an administrative priority, without regard to whether such payment would cause Debtor's mortgage payment to be late. Liou argued that no plan payments were due from Debtor before the thirty days required under § 1326(a)(1), *i.e.*, September 16, 2011, regardless of what a trustee's practice is in making distributions, which Liou was unaware of given that the trustee was not yet assigned at the time. Liou also argued that the court approved form of Retention Agreement allows him to be paid prior to filing of a case, which right is not dependent on Debtor's ability to make Chapter 13 Plan payments.

While Liou did not attend the § 341 creditors meeting, Scott Zale, an attorney from his office who did attend, stated that Debtor testified that "he thought that approximately $1,000 of his payment would be applied to attorney's fees and that approximately $2,000 would be applied to his mortgage." Despite that testimony, Liou still contends Debtor understood that the entire pre-petition payment would be applied to Liou's legal fees, and not to the Chapter 13 Plan for mortgage payments, for the following reasons: (1) Liou provided Debtor with a "directives page" at the time of payment, which specifically stated that the entire payment was for attorney's fees;

9

(2) Sylvia Valdez, a paralegal in Liou's firm, translated the "directives page", word for word, into Spanish for Debtor at the time he signed it; (3) Liou and Scott Zale were the only firm employees, other than Sylvia Valdez, who communicated with Debtor, and neither ever told Debtor that any portion of the referenced payment would be applied to anything but attorney's fees; (4) Debtor understands English as Liou has spoken to Debtor on the telephone in English, and Debtor has responded in English; and (5) Debtor was given a receipt for the $3,702.64 payment that clearly states that the payment was for "Chapter 13 attorney fees."

Liou argues that he did not know when the Chapter 13 Trustee would make a mortgage payment on behalf of Debtor. Liou contends that Debtor asked him to delay the filing of the Petition to allow for the due date of payments to the Trustee to be any time after the 3rd of each month to allow Debtor time to collect the funds needed to make the required payments. Liou states that although Ms. Valdez initially met with Debtor on July 15, 2011, Debtor did not bring a check to Liou's office until August 11, 2011. Liou explains that since it is his office's practice to file new cases on Tuesdays, Debtor's case was filed the following Tuesday, August 16, 2011. In any case, Liou contends that Debtor missed the first Plan payment due on September 16, 2011, made a Plan payment on October 12, 2011, but then missed his November 16, 2011 payment. Therefore, Liou argues, Trustee is wrong to assert that but for Debtor's payment of attorney fees up front, Debtor would have remained current on his mortgage payments.

Liou also argues that the Retention Agreement provides for a pre-petition payment in the case of "flat-fee" arrangements, and such payment became property of Liou upon receipt. He cites *Dowling v. Chicago Options Associates, Inc.*, 875 N.E.2d 1012, 1025 (Ill. 2007), which held that funds paid by law firm's debtor were advance payments that became property of the law firm upon receipt. However, the cases cited by Liou do not address one issue that parties were asked to brief, *i.e.*, whether the court could order that Liou's fees be paid by installment through the plan, while retaining its priority status, which is a "timing" issue.[1]

---

[1] Other cases cited by Liou include the following: *In re Burnside Steel Foundry Co.*, 90 B.R. 942 (Bankr. N.D. Ill. 1988) (retainer avoids the subordination of Ch. 11 administrative expenses to Ch. 7 administrative expenses upon conversion); *In re Pannebaker Custom Cabinet Corp.*, 198 B.R. 453 (Bankr. M.D. Pa. 1996) (unless excessive or unreasonable, retainer not subject to disgorgement to achieve parity among administrative claimants due to attorney's superior priority as secured creditor); *In re Printing Dimensions, Inc.*, 153 B.R. 715 (Bankr. D.Md. 1993) (counsel not required to share pre-petition retainer pro rata with other administrative claimants where retainer is treated as security or held in trust); *In re North Bay Tractor, Inc.*, 191 B.R. 186 (Bankr. N.D. Cal. 1996) (attorney's interest in retainer "is in the nature of a security interest, assuring the attorney of a minimum fee in the case" and to require attorney to disgorge the retainer so that other claimants of equal priority receive equal dividends would "undermine the purpose of retainers"); *Matter of K & R Mining, Inc.*, 105 B.R. 394 (Bankr. N.D. Ohio 1989)

Document   Page 11 of 13

Nevertheless, in his response brief, Liou concedes that the "court certainly has the authority to require that an attorney's compensation be paid through the Debtor's plan, once it is confirmed." But, Liou argues that as soon as any plan is confirmed, any fees ordered disgorged by him pursuant to the Chapter 13 Trustee's Motion will be paid back to him anyway, while also incurring an additional fee to the Trustee for administering the payment to the detriment of Debtor. Again, Liou concedes that the court has the authority to make "unsual" modifications to the Chapter 13 plan, he argues that such modifications are not necessary in this case, because Debtor is nearly caught up on his payments to the Chapter 13 Trustee (only $3,837 behind in payments as of April 2, 2012).

Liou cited *In re Randolph*, No. 98-31564, 2001 WL 1223139, *11 (Bankr. N.D. Ind. Sept. 20, 2001) in support of his position. However, the issue in *Randolph* was whether post-petition mortgage payments or first priority administrative claims should be paid first. The bankruptcy judge held that "§ 1326 does not mandate that all such administrative expenses always be paid before the payments to other creditor, but it does insist that such expenses as the fees of a debtor's attorney are to be paid concurrently with or in advance of payments to other creditors and not behind those payments." *Id.* at *9.

Section 329(a) of the Bankruptcy Code requires any attorney representing a debtor to file with the court a statement of compensation paid or agreed to be paid within one year prior to the petition date. It provides that "if such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to – (1) the estate . . ., or (2) the entity that made such payment." 11 U.S.C. § 1329(b).

Did compensation that Liou received up front exceed the reasonable value of the services Liou has provided to Debtor? This is the fourth Chapter 13 case that Liou has filed on behalf of Debtor in the span of six years; three of the cases have been filed within the last three years. Debtor has paid Liou's attorney fees up front in each of the prior three cases, totaling about $10,000. Liou was the only person to benefit from Debtors prior three cases. Creditors were not paid in accordance with prior plans. Debtor's mortgage arrears have increased almost 400%

---

(rejecting under Ohio law the assertion that debtor's attorney was required to turn over his retainer to be share pro rate by all administrative claimants) and *In re Kinderhaus Corp.*, 58 B.R. 94 (Bankr. D.Minn. 1986) ("A pre-petition retainer held in trust by a debtor's attorney . . . is not ordinarily available as a source of payment for other administrative expense claims under 11 U.S.C. § 503(b)"). None address the issue and situation as presented by the Court.

since the first case was filed. Finally, Debtor entered this case even more at risk of losing his home and his job if he loses his driving privileges, should the current case be dismissed or the current plan fails.

Debtor had all three prior cases dismissed for failure to make plan payments. In fact, the trend has been that in each successive case Debtor fails to make payments sooner than the last. When asked why Liou believed why Debtor would be successful in the current case when he failed in the prior three, Liou testified that Debtor has a new job. Yet, Debtor fell behind in his payments to the trustee in the current case and risked having his case dismissed even before the plan could be confirmed. The stay was lifted on his home mortgage.

Given that Liou has represented Debtor in the prior three cases, and Liou has not identified any major changes in Debtor's circumstance other than a new job, the current case would seem to require less legal work than in the prior cases justifying a lower fee. Yet, Liou has charged Debtor the maximum fee ordinarily allowed in this District in Chapter 13 cases, $3,500 when the standard fee agreement form is used. Also, there is the Debtor's credible testimony that he thought all but around $1,000 was going toward his mortgage, not Liou's fees. In light of these facts, it appears that the compensation received in this case exceeded the value of services provided to Debtor overall.

A bankruptcy judge has discretion in setting the amount and timing of attorneys' fees payments, allowing fees to be made concurrently with payments to creditors, but requiring that the fees payment begin with the first payment to creditors. *In re Pappas & Rose, P.C.*, 229 B.R. 815, 820 (W.D. Okla. 1998). However, 11 U.S.C. § 1326 does not mandate that all such administrative expenses always be paid before the payments to other creditors. Initial payments to debtor's counsel must be paid no later than the first payments to the other creditors. *In re Lanigan*, 101 B.R. 530, 532 (Bankr. N.D. Ill. 1986).

In chapter 13 cases, fees are awarded to debtors' attorneys under 11 U.S.C. § 330(a). They are categorized as administrative expenses under Code § 330(a)(4)(B) and Code § 503(b)(2) and are entitled to priority under Code § 507(a)(1). *In re Randolph*, 2001 WL 1223139, at *8. The administrative expenses and charges of Code § 507(a)(1) are usually treated as priority claims entitled to full payment in deferred cash payments under Code § 1322(a)(2). However, when a priority payment is made in deferred payments, Code § 1326 is triggered. *Id.*

Section 1327(b) of the Code specifically authorizes the payment of administrative expenses (such as fees to the debtor's attorney) either "before or at the same time of each payment to creditors under the plan." Code § 1326 does not mandate that all such administrative expenses always be paid before the payments to other creditor, but it does insist that such expenses as the fees of a debtor's attorney are to be paid concurrently with or in advance of payments to other creditors and not behind those payments. *Id.* at *9. Neither the secured creditor must or should be fully paid before the other is paid. Instead, the contemporaneous payment of both, in terms set forth by the plan, is the fairer method, one that shares both the funds and the risks of success of the chapter 13 plan. *Id.* at *10.

### Conclusion

The attorney for Debtor should have made sure he was putting forth a viable case that had a fair chance for confirmation and completion for benefit of the debtor. Since this was the fourth attempt, funds available pre-filing should have gone toward Plan payments and the attorney should have taken the risk of non-payment of fees through the Plan. Therefore, under § 329 Liou will be ordered to return the $2,768.77, received up front for fees in the current case, to the Chapter 13 Trustee for payment into the Plan. The rest that was paid to apply on fees owed in the prior case may be kept because that is what Debtor intended.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 25 day of October, 2012.

13